FILED 13 JUN '14 16:40 USDC-ORE

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

Linda Thompson

*(Enter full name of plaintiff(s))*

**Plaintiff(s),**

v.

Gene Lanke et al

*(Enter full name of ALL defendant(s))*

**Defendant(s).**

Civil Case No. 6:14-cv-00963-TC
*(to be assigned by Clerk of the Court)*

**COMPLAINT**

Jury Trial Demanded
☑ Yes    ☐ No

## I.  PARTIES

*List your name, address, and telephone number below, and the same information for each defendant. Make sure that the defendant(s) listed below are identical to those contained in the caption of the complaint. Attach additional sheets of paper if necessary.*

**Plaintiff**

Name: Linda Thompson
Street Address: 581 Cascade Dr SE Ste #166
City, State & Zip Code: Salem OR
Telephone No. 619 797 7323

COMPLAINT
Revised: July 20, 2010

Page 1

9062

**Defendant No. 1**  Name: Gene Lamke
Street Address: 5500 Campanile
City, State & Zip Code: San Diego CA 92182
Telephone No. 619 594-5000

**Defendant No. 2**  Name: Church of Scientology
Street Address: 1330 4th Ave
City, State & Zip Code: San Diego CA 92101
Telephone No. 619 239-2091

**Defendant No. 3**  Name: Deanna Duncan
Street Address: 10004 Cliffridge Pl.
City, State & Zip Code: Spring Valley CA 91977
Telephone No. 619 465-1307

**Defendant No. 4**  Name: Chase Care Center, Inc.  Presently San Diego Post Acute as of 4-1-14
Street Address: 1201 S. Orange Ave
City, State & Zip Code: El Cajon CA 92020
Telephone No. (619) 441-1988

## II. JURISDICTION

*Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. A case involving the United States Constitution or federal laws or treaties is a federal question case. A case in which a citizen of one state sues a citizen of another state and the amount in damages claimed is more than $75,000 is a diversity of citizenship case.*

A.  What is the basis for federal court jurisdiction (*check all that apply*)
  Primary                                      Secondary
  [✓] Federal Question                         [✓] Diversity of Citizenship
                                               for State Cause of Loss

Defendant No. 5 Name: Kaiser Hospital
Street Address: 4647 Zion Ave.
City, State & Zip Code: San Diego, CA 92120
Telephone No.: (619) 528-5000

Defendant No. 6 Name: Dr. John or Stenford Yee
Street Address: 4647 Zion Ave
City, State & Zip Code: San Diego CA 92120
Telephone No.: 619 528-5000

Defendant No. 7 Name: Dr. Howell
Street Address: 10990 San Diego Mission Rd
City, State & Zip Code: San Diego CA 92108
Telephone No.: (619) 528 1245

Defendant No. 8 Name: Sharp Mesa Vista Hospital
Street Address: 7850 Vista Hill Ave.
City, State & Zip Code: San Diego CA 92123
Telephone No.: (858) 278-4110

Defendant No. 9 Name: Dr. Markman
Street Address: 7850 Vista Hill Ave.
City, State & Zip Code: San Diego CA 92123
Telephone No.: (858) 278-4110

Defendant No. 10 Name: San Diego Housecall
Street Address: 
City, State & Zip Code: CA
Telephone No.: 858 877-3701

Defendant No. 11  Name: State of California Department of Health ~~Health and Human~~ ~~Services agency~~ Licensing and Certification
Street Address: 7575 Metropolitan Dr. Ste. 211
City, State & Zip Code: San Diego, CA 92108
Telephone No.: 1(800) 339-4661

Defendant No. 12  Name: State of California Health and Human Services agency Licensing and Certification
Street Address: Leebeth Woodin, Health Facilities Evaluator Supervisor
City, State & Zip Code: Same as above
Telephone No.: 619 688-6690

Department of Public Health Director Ron Chapman

Defendant No. 13  Name: California Highway Patrol
Street Address: 1722 East Main St.
City, State & Zip Code: El Cajon CA 92021-5259
Telephone No.: 619 401-2000

Defendant No. 14  Name: City of El Cajon
Street Address: 200 Civic Center Way
City, State & Zip Code: El Cajon CA 92020
Telephone No.: 619 441-1716

Defendant No. 15  Name: City of El Cajon, City Manager Douglas Williford
Street Address: 200 Civic Center Wy.
City, State & Zip Code: El Cajon CA 92020
Telephone No.: 619 441-1716

Defendant No. 16  Name: City of El Cajon Mayor Mark Lewis
Street Address:
City, State & Zip Code: Same as above
Telephone No.: 619 441-1716

Defendant No. 17  Name: City of El Cajon Police Department
Street Address: 100 Civic Center wy.
City, State & Zip Code: El Cajon CA 92020
Telephone No.: (619) 579-3311

Defendant No. 18  Name: City of El Cajon Police Dept.
Street Address: Chief Jim Redman
City, State & Zip Code: 100 Civic Center wy.
Telephone No.: El Cajon CA 92020
(619) 579-3311

Defendant No. 19  Name:
Street Address:
City, State & Zip Code:
Telephone No.:

Defendant No. 20  Name: California State Senator Joel Anderson
Street Address: 500 Fesler St. #201
City, State & Zip Code: El Cajon CA 92020
Telephone No.: 619 596-3136

Defendant No. 21  Name: Cofr Calif. State Senator Joel Anderson's office
Lori Brown, District Representative/Case Worker
Street Address: Same as above
City, State & Zip Code:
Telephone No.: (619) 596-3136

Defendant No. 22  Name: Dr. Robert Carlson  San Diego Housecall
Street Address:
City, State & Zip Code: CA
Telephone No.: 858 877-3701

Defendant No. 23 Name: San Diego County
Street Address: 1600 Pacific Hwy #335
City, State & Zip Code: San Diego, CA 92101
Telephone No.: (619) 531-5600

Defendant No. 24 Name: San Diego County Board of Supervisor Diane Jacobs
Street Address: 1600 Pacific Hwy #335
City, State & Zip Code: San Diego, CA 92101
Telephone No.: (619) 531-5600

Defendant No. 1 Name: San Diego County Dept of Aging and Independent Services
Street Address: ~~1600 Pacific~~ P.O. Box 23217
City, State & Zip Code: San Diego CA 92193-3217
Telephone No.:

Defendant No. 25 Name: San Diego County Health & Human Services Agency, Dept of Aging and independent Services
Street Address:
City, State & Zip Code: P.O. Box 23217 San Diego, CA 92493-3217
Telephone No.: 800 ~~510-2020~~ 339-4661

Defendant No. 26 Name: Perry Moore, San Diego County of San Diego, Aging and independence Services
Street Address: title: Ombudsman
City, State & Zip Code: P.O. Box 23217 San Diego, CA 92193-3217
Telephone No.: 800 339-4661

Defendant No. 27 Name: ~~State of~~ San Diego County Health & Human Service Agency, Dept of Aging and Independent Services, Pam Smith Director
Street Address:
City, State & Zip Code: P.O. Box 23217
Telephone No.: San Diego CA 92193-3217
800 339-4661

Defendant No. ___  Name: *State of California Bureau of Medical Fraud*

Street Address:_____

City, State & Zip Code:_____

Telephone No.:_____

Defendant No. ___  Name: *Department of Justice State of California*

Street Address:_____

City, State & Zip Code:_____

Telephone No.:_____

Defendant No. ___  Name:_____

Street Address:_____

City, State & Zip Code:_____

Telephone No.:_____

Defendant No. ___  Name:_____

Street Address:_____

City, State & Zip Code:_____

Telephone No.:_____

Defendant No. ___  Name:_____

Street Address:_____

City, State & Zip Code:_____

Telephone No.:_____

Defendant No. ___  Name:_____

Street Address:_____

City, State & Zip Code:_____

Telephone No.:_____

B.  If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory, or treaty right is at issue?

§1983 for Civil Rights

Diversity for State Causes of Action

C.  If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state of citizenship  Oregon

Defendant(s) state(s) of citizenship  California

### III. STATEMENT OF CLAIMS

#### Claim I

*State here as briefly as possible the facts of your case. Describe how each defendant was involved, when the conduct occurred, and any injuries you have suffered as a result. It is not necessary to give any legal arguments or cite any cases or statutes.*

About March 2012 Diane Jacobs was advised of Elder abuse allegations and did not assist. She did not hire tain or manage staff. She was deliberate indifferent.

State Action, discrimination, wrongful death, intentional infliction of emotional distress

Please see Stmt of facts and list of causes of loss attached

## Claim II

*State here as briefly as possible the facts of your case. Describe how each defendant was involved, when the conduct occurred, and any injuries you have suffered as a result. It is not necessary to give any legal arguments or cite any cases or statutes.*

5-2011 to 6-2013
Chase Care Center, Inc. Dr. Howell

Negligence, intentional infliction of Emotional distress, Elder abuse, Fraud.

State Action Conspiracy Discrimination

## Claim III

*State here as briefly as possible the facts of your case. Describe how each defendant was involved, when the conduct occurred, and any injuries you have suffered as a result. It is not necessary to give any legal arguments or cite any cases or statutes.*

January 2013
Kaiser Hospital, Dr. John or Stanford Yee

medical malpractice, negligence, failure as mandated reporter for Elder abuse, Intentional Infliction of Emotional Distress, Fraud.

State Action Conspiracy discrimination

*(If you have additional claims, describe them on another piece of paper, using the same outline.)*

**Claim IV**

about Nov 2011

Sharp ~~Memorial~~ Mesa Vista Hospital

Dr. Markman

failure to report Elder abuse
or report as mandate reporter

**Claim V**

San Diego Hospital

Dr. Robert Carlson

Breach of contract, failure to report
as mandate reporter Elder abuse

Claim VI

Jan 2012

State of California Health and Human Services agency Licensing and Certification, Director -
  failure to report Elder Abuse negligence wrongful death

Bureau of Medical Fraud
  failure to report Elder Abuse, negligence
  State Action, violation of Civil rights,
  Equal protection under the laws

California Dept of Justice

  Intention Infliction of Emotional Distress, failure to investigate report Elder abuse, negligent supervision training and hiring.
  State Action
  violations of Civil rights, Free speech and Right to association

Claim_VI

City of El Cajon

El Cajon Police Dept

Intentional Infliction of Emotional distress, Fraud, failure to act as Mandated Reporter
violation of Civil rights, Free speech right to association

Claim_VII

Calif State Senator Joel Anderson
Lori Brown, Case worker

Intentional infliction of emotional distress harassment, Fraud, wrongful death
State Action, Conspiracy Discrimination
violation of civil rights, Free speech

## IV. RELIEF

*State briefly exactly what you want the court to do for you and the amount, if any, of monetary compensation you are seeking. Make no legal arguments. Cite no cases or statutes.*

Plaintiff pays for a judgement in her favor and an award of:

1. $1,250,000 Compensatory Damages
   $3,250,000 Punitive Damages

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 13 day of June, 2014.

_____
*(Signature of Plaintiff(s))*

COMPLAINT
Revised: July 20, 2010

Page 5

## FACTS

On about August 14, 2011, Stacy Bernitz, incarcerated Raymond Bernitz into the Chase Healthcare nursing home facility. Chase Healthcare had a copy of his Power of Attorney including his end of life directive. Chase had the opportunity to allow Raymond to be placed at a more appropriate situation but refused. The plaintiff advised the facilities employees, social worker, Pat Marks, Lorren _____ RN, Administrator Christine Whittaker, Physicl Therapise, Roger_____ that she had just finished law school on July 30, 2011 and was now available to take over the care of her father. Plaintiff advised the defendants that she had located a home board and care that already agreed to accept her father if he had demensia, was non ambulatory and was incontennient for $2500 per month. In fact, the referral to this board and care came from Kaisers discharge nurse and their nurse had made a referral to their board and care placement company because Raymond was considered a suitable for this type of care facility. Plaintiff advised the defendants that Raymond was capable of paying for the board and care with his pension, social security and a veterans pension which gave him about $3900 per month. During the intitial meetings with the defendants, my father made it clear he did not want to stay at their facility and preferred to go home.

During the first few weeks, Raymond had a difficult adjustment to Chase Cre. The staff did not like attending to all his complaints and concerns. In Novemeber, Raymond told me that he was sitting in the hallway with his underward wedged up his scrotum and he couldn't get anyone to help him. Finally he screamed out and he only recalls being taken in an ambulance to a psychiatric hospital named Vista Hill. It seems he stayed there a few days and dispite the requests of the plaintiff that he was being abused, he was discharged back to Chase Health care.

During this time my father's head was nearly shaved for a hair cut. He always wears his hair a couple inches long in the front.

The Chase Care Staff made the recommendation that plaintiff not be allowed to know about her father's treatment to her sister Stacy who claimed power of

attorney and Stacy Agreed. Therefore, soon after her father's incarceration, plaintiff was denied any acess to information of her fathers treatment or condition.

On one visit his front teeth were there as usual but then when I visited a couple days later, his front teeth were missing. Raymond complained that he had fallen. They appeard to be broken off near the base. When the plaintiff questioned the staff about it, they laughed at her saying they were always that way.

When the plaintiff took Raymond to the front of the facility to get some fresh air and sunshine for ten or fifteen minutes Nurse Loreen abruptly stopped them in the hallway and said that he could not go because lunch was about to be served. Raymond said that he was not hungry, but she would not let him go and was confrontational to plaintiff. After lunch, plaintiff wheeled Raymond to the front of the hospital and just when he thought he had a private moment with the plaintiff, he told her that he would like an attorney to get out of that facility. Just as he was speaking those words, Dr. Howell had pulled up in his car and was listening. Plintiff was afreaid for her father's safety drove to the El Cajon Police Department and reported elder abuse. First, they told her that they would not take a report unless she wrote it down then after the plaintiff wrote down the facts and circumstanced surrounding the incident they refused to take it. They would not take any action. The next day, when the plaintiff whent to see her father, his nose was bent over and appeared to be broken. When she asked about it to the nursing staff, Amanda laughed and said his nose looked the same as it did since she had been working there. The plaintff's father complained daily about the treatment fro the facility. He asked the plaintiff to call the police but when the police would come he would suddenly claim up. In about August 2012, the plaintiff's father told her that he had been set out in the hallway in his wheelchair and fell out onto the floor and he was in excruciating pain in his back. The nursing staff told the plaintiff they did not have time to watch her father as he needed to provide for his safety. Although he repeatidly said he was in excruciating pain the facility would not take him for and x-ray. Three weeks later, plaintiff contacted the police again about the situation. After that, the plaintiff's father started "itching like crazy" on his back. The bumps seems to break out and

then seemed to smooth over and then break out again. The plaintiff told the nursing staff that the condition may be scabies. The nurse said that they checked him for that and it wasn't. The plaintiff's father continued with this cycle for three and a half months until his scheduled him for a dermatoligist appointment which was held in mid-January 2013.

Prior to this, plaintiff had met California Senator Joel Anderson and he had given her his card askinf her to call him if she had any questions. Plaintiff did call him about getting her father out of the Chase Care facility. The Plainiff was transferred to his El Cajon office. She had a strange telephone call with his employee Lori Brown were Ms. Brown told her to come right down and bring her file and her daughter. Ms. Brown's tone seemed hostile and overly aggressive and she did not sound sincere. Plaintff decided not to follow up with her again about her father. About six or eight weeks later, the plaintiff received a call from Lori Brown saying that she wanted to refer the case to a district attorney like it was a pressing matter and she obtained the plaintiff's permission. However, Ms. Brown would not give the district attorneys name. This was about the beginning of December 2013. Strangely, plaintiff never heard from a district attorney's office.

On the day of his dermotolgy appointment, plaintiff went to Chase Health Care and she was told that he had fainted and was taken to Kaiser Hospital Emergency. When plaintiff arrived at the ER, her father told her that he was sat up to go to his appointment and while he just arrived there, he either fainted or passed out. He said that he had not been sat up in weeks. When the ER psycisian arrived, Dr. Yee, plaintiff explained the situation and asked him to look at the skin condition on his back. Dr. YI refused to look at his back but said that he was aware that there was a big outbreak of scabbies at Chase Health Care. He inferred that if I continued to get help for my father that my father would die like 3:00 a.m. one night. This seriously upset the plaintiff and it was taken as a threat. Then, the doctor walked away. The plaintiff's father was taken to a room nd when the social worked came, plaintiff again asked for an examination of her fathers back. The social worker was very hostile and refused. The social worker also refused to consider another placement for her father or to consider elder abuse including

neglect for the back condition. The plaintiff's father was returned to Chase Health Care.

Plaintiff told the staff that Dr. Yi admitted that there was a big scabbies outbreak at the facility and she wanted him to have the medicine for that. Soon after that, my father was given a back treatment that left his back deep red and appeared to be burned.

On obout Janury 8, plaintiff notified County board of supervisors, Diane Jacobs, that she was going to be added as a defendant to a lawsuit which was subsequently going to be served. This hostile incident with Kaiser happened in the middle of January or about a week later. On about February 8, 2013, diane Jacobs was sent another letter placing her on notice of the lawsuit to be filed and served. On about February 11, 2013 a suspicious woman was outside the plaintiff's home on the bank across the street looking at the plaintiff when she arrived home and the plaintiff's house. The woman appeared to be on the telephone. Plaintiff ignored her and she finally left. Prior to that in January, it appeared the same woman was following the plaintiff as she crossed the street in Coronado on a Sunday after looking at the Christmas Tree at the hotel Del Coronado. The woman was walking with an attitude of indignant power as the plaintiff and her daughter were crossing the street. There was two vehicles one the side of the road with several men standing by on the sidewalk. Plaintiff feared for her safety and the safety of her daughter so she turned and went another direction so she did not have to walk between them, their car and the woman.

On about Sunday, February 16 2013 plaintiff called Chase Health Care in the afternnon to speek to her father. The nurse jose gave the hone to him. He was gasping for his breath and said he could not breath. He told me that someone put something in his mouth while he was sleeping. I told jose to do something and he saifd that he check his oxygen level and he was actually fine and this was not an emergency. I called back a couple hours later and again my father was gasping for air and couldn't speak very good. Again, Jose said he was fine dispite that fack that my father said he could not breath right in front of him. Plaintiff called Stacy

but she was not concerned. The plaintiff was so wrooried, she remembered Dr. Yi had and about 3:00 a.m. and her father dying so she called about 3;00 a.m. to check on him again. The Plaintiff could not get anyone to answer the phone. She called El Cajon Police to have a well check conducted. The officer told her to go to the facility herself. She called the facility again and a nurse answered and told her he was asleep. The plaintiff did not think these circumstances sounded right so she arranged for an independent doctor to examine her father the next day. Dr. Carlson met her at the facility.

Dr. Carlson and the plaintiff was suddenly accompanied by Stacy. Stacy kept interfering with the examination. Dr. Carlson, kringed when he saw her father's deep red back. He said the only was to heal that condition was to keep rotating him to keep him off his back. Dr. Carlson said that her father's back would not heal if he layed on it. The plaintiff told the doctor that her father keeps falling out of bed. He said that because he was on Cumiden that everytime he fell out of bed her risked his like because if he hit his head he could bleed internally. Because my father was at risk of death because he fell out of bed ofter, I asked Dr. Carlson to assist me in having my father moved to a more appropriate facility. His conclusion was that the care my father was receiving was somehow acceptable for skilled nursing care standards. Stacy heard this and became happy and left. His conclusion was shocking since my father was not being rotated so his back could not heal and was in danger of hitting his head and dying at all times. Stacy left with his care remaining at this same level. I paid Dr. Carlson about $500.00 for the examination.

My father sid that a lady came to speak to him and introduced herself as a social worker but only asked him about questions about me. Her questions became so offensive, he refused to speak to her anymore. The plaintiff asked Chase Health care verbally and in writing who was this woman was but the facility administration or staff would not respond.

Two weeks before he died, while he was on repite care, a dentist pulled out at least one tooth. My father said that it was painful and believed that the dentise did not use any numbing medicine. He said that it was rough treatment.

Fraud

Intentional infliction of emotional distress

Wrongful death

Elder abuse

Violation of Civil Rights. Freedom of Association, Freedom of Speech

State Action

Conspiracy

Discrimination


Equal protection

State Claims filed under diversity